The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good morning. Good morning. The first case on our docket is 20-50225, United States v. McElroy. Mr. Smith. Yes, Your Honor. Should I go ahead? Yes. Oh, okay. May it please the court, my name is Peter Smyth. I represent Kevin McElroy. Mr. McElroy is currently serving a 24-month revocation sentence after a revocation hearing where he pleaded not true to all of the government's allegations. The government's evidence, only evidence at the revocation hearing was a lab report that it introduced at the time of the hearing. We presented two issues on appeal. One, and they're interrelated, actually. They center on this court's prior decision in Granlund, the rules set down in Granlund in 1996. We claim that the government failed to comply with Granlund, and therefore its noncompliance and the district court's noncompliance actually should work to effectuate a vacatur and dismissal of the petition. Also, the government's failure and the district court's failure worked to a revocation sentence that was based upon insufficient evidence when looking at the lab reports. Going back to the Morrissey case, the Morrissey case established the right, a defendant's right to confront and cross-examine adverse witnesses unless the hearing officer specifically found good cause for not allowing the confrontation. When reading Morrissey, the concurrence and also the dissent, that good cause related to informants. It didn't relate to any other matters, actually. After Morrissey, we come to the Caldera case, and that's where a police officer introduced the lab tests, and that was reversed and remanded under the Sixth Amendment. The Bentley case came next and applied the Sixth Amendment but found harmless error. And then, interestingly enough, in Kindred in 1990, the court changed the criteria and said that Caldera was inconsistent, and now it was going by Rule 32.1 and applying a balancing test. This is under plain error, correct? Yes. Did you concede that? I'm sorry? Did you concede that our review is under plain error? Actually, no, Your Honor, because of Granlin. I think Granlin actually introduces a new element that the court needs to review, because if the court just says… Did you object on that basis in the district court? In the district court, the trial lawyer made a constitutional objection. He did not mention Granlin by name, no. Okay, so what I'm saying is you failed to make a proper objection to the argument that you're now making, and so don't we have to review that under plain error? Under plain error review, it requires you to make certain showings of prejudice and, I mean, the four steps of plain error review. Well, Your Honor, I think the Granlin rules actually add another layer, because the Granlin rules talk about confrontation, and although the trial lawyer did not mention Granlin by name, the rules of federal evidence don't apply to these hearings. And he gave the district court enough notice that the district court was put on notice. Also, Granlin is a mandatory rule under this circuit's case law, so the government was obligated to file the lab reports and all the Granlin elements at least five days… You were obligated to make a proper objection, and I'm asking you whether the objection that you made with respect to the denial of cross-examination is satisfactory to raise all of the elements of the Granlin rule. I believe so, yes, Your Honor. Okay, tell me why. I'm sorry? Tell me why. Because the trial lawyer said, I'll make a constitutional objection, and he said the lab technicians are not here, and later on in page 154, he says, same objection I previously made regarding the Sixth Amendment hearsay. The crux of Granlin is that Granlin wants to protect the due process rights of the defendant under the Sixth Amendment or under the Fifth Amendment. I mean, that's what Granlin says. Granlin does not apply in this case, as I understand the case, unless you can show and satisfy the plain error analysis. And if you can't show that you're entitled under the plain error analysis for us to review it, we have no right to review it because you failed to make the proper objection. That's what I'm saying. Well, I think plain error is present in the record. What you have is just a lab report that constitutes maybe element one of Granlin that was admitted over objection. Granlin elements two, three, and four. How were you prejudiced? How were you prejudiced by the district court failure to follow the government in this case failure to follow the Granlin rule? How were you prejudiced? Well, because the district court admitted the evidence over objection. And it was a confrontation objection. Yeah, but then so that doesn't indicate you were prejudiced ultimately. Well, when the district court when the district court decided the case solely on the lab reports. Okay. Right. The plain error occurs when well. You have you have plain error when the district court disregards the Granlin criteria, which is a mandatory rule, but then under the revocation law. The district court abuses its discretion when it decides to revoke when the evidence does not meet a preponderance of the evidence. And that that's the situation that you have here. You have a lab report that is a bare lab report that does not have chained custody information on it. There is no scientific methodology. Those things that were required of Granlin to what assured that Granlin says to assure the reliability of the lab reports being introduced evidence. So the government disregards the mandatory rule and has this lab report admitted over objection. And the district court doesn't make any explicit findings of its reliability, which it's required to do. It just overrules the objection, which is a confrontation objection, which was proper and which was sufficient to put the district court on notice what the objection was. And just based solely upon that evidence at the hearing, the government didn't present any other evidence. The government, in its brief, says that the district courts could have relied on Mr. McElroy's admission to the probation officer about crack use, but that was not presented at the hearing. The government says that the district court could have relied on Mr. McElroy's admission to the probation office officer about meth use. That was not presented at the hearing. The necessity of inpatient treatment that was not presented at the hearing or the lengthy history of cocaine use in the PSR. The PSR was not presented at the hearing. So the only evidence that the district court could rely on in revoking Mr. McElroy's supervised release was this lab report. And then we do go back to Brandlin. And I guess the question before the court is whether Brandlin is a mandatory rule or not. This court has recognized that it is. And if the if the government decides that it's not going to put mandatory rule. Well, one, the Brandlin explicitly says that the following procedures were missing for all future revocation hearings involving positive laboratory tests. And then also in the minute case, I believe that minute recognizes which it does not require. You're saying a mandatory means that the district court was obligated to do it, notwithstanding the fact that you made no objection to its failure to follow the rule. Actually, I think that's correct, Your Honor. I think that's a correct reading of Brandlin. And I think it's a correct reading of the court's reference in minutes because Brandlin is says what is for all future revocations. These are the procedures that the government needs to do in order to what have labored positive, positive laboratory tests admitted into revocation hearings. Now, the Brandlin is not a suggestion. It's not a recommendation. So if the government does not comply, the question is, who's harmed? Well, in this case, Mr. McElroy is harmed. Cancel your. Can you address in your remaining time or some of the remaining time your acid ingestion ingestion argument? Well, yes, Your Honor, the. That was raised by defense counsel in the cross examination of the probation officer, I think. Frankly, in going back to the laboratory test that was admitted in the hearing, there is no there. There is no methodology with that test. There is no affidavit with that test. As I review the report, I don't even know what kind of test was done. And so I think what the trial lawyer was doing after admitted he was cross examining the probation officer to to show the district court that this this lab report constituting element one of the Brandlin criteria was not reliable because it did not. There's no methodology shown. There's no methodology of of disregarding false positives and the rest. When you look at the lab report itself, there's no collector's name. There's it does not line up with Brandlin at all. And so it does come back to the question, I think, before the court is, is Brandlin just does it boil down to be a recommendation that the government can disregard or is it mandatory in order for the government to have these lab reports admitted? Because when you have when you see the history of the cases, the government's sites over and over again with Corman, which was in 1995, and then Brandlin is decided in 96. And this court in 96 says, OK, from here on out, this is what the government needs to do to assure reliability of lab reports and this reliability. This is what the government needs to do. And then the district court needs to make explicit findings on the records about that reliability. If the if if the lab report, say in this case, doesn't line up with Brandlin, then there is a presumption that it's unreliable because it doesn't meet the Brandlin criteria. But going back to the court's question, I don't I don't believe that the trial court I mean, the trial lawyer needs to object based upon Brandlin because Brandlin is mandatory. You know, that's what this court has set out to do. If it's not mandatory, then this court can rescind or modify the Brandlin order. But Brandlin does say that from here on out, we invoke our supervisory authority and direct the following procedures for all future revocation hearings involving positive laboratory tests. And it lays that out what to assure the reliability of those tests in revocation hearings. OK, thank you, counsel. You save time for rebuttal. Thank you, Mr. Durbin. Good morning. May it please the court. Richard Durbin for the United States. Judge Jolly to first address the one of the questions you raised concerning the standard of review. As I read the the record of the revocation hearing, there were basically, I don't know, two or three objections. There was an objection that was based on the Sixth Amendment right to confront or cross examine, I guess, the lab technician that it wasn't entirely clear who he wanted to cross examine. He invoked the Sixth Amendment, but I suspect that that is adequate to invoke the qualified confrontation right that the courts have recognized in the context of parole hearings and revocation hearings. That was one objection. There was no objection based on Grandlin. There was there was no object. In fact, there was no challenge to the accuracy of the result of the lab report. The issue with this hearing, and it was a strategic issue that both Mr. McElroy referred to and the lawyer referred to at the beginning of the hearing. The strategic issue was whether or not not whether or not this was a positive result. That wasn't in contest. What was in contest was whether Mr. McElroy had knowingly ingested cocaine, which would result in a finding that he knowingly possessed cocaine, which would result in automatic revocation and more time in jail. That was what the issue was at the hearing. The lab report. I mean, this court has has has considered a number of cases involving this type of hearsay, and I would contrast it with the type of case where where the hearsay is a who saw what out of court witness such as an informant or a victim of a crime. And in those cases, this court has has scrutinized it fairly closely and has said, no, those in the balance of the defendant's interest in cross examination against the government's interest essentially in efficiency. The defendant's interest outweighs it. But but in the case of lab reports. These are business records, they're, they're done by companies that are in the business of doing these kinds of analyses. The it's it's not in the record, but I would suggest the probation offices in this in this circuit do a lot of these they collect a lot of these samples they move a lot of them along. There is a process here, and there was no challenge to the integrity of the process in this particular instance. I mean, for example, the, the, the custodian of records the certification. Was by a Patricia Pizzo Miss Pizzo his name occurs in several of this courts cases she's the she's the lab director now for Abbott, but she was at one time the lab director for Kroll she was the subject in part or she was a witness in the in the minute case. There wasn't a question about the, the, the integrity of this as far as the methodology. The report indicates it was gas chromatograph mass spectrometry, or it was liquid chromatograph and tandem mass spectrometry. That was the method of confirmation and there was a validity test that was done testing the specific gravity the creatinine and the pH. So, the, the lab report wasn't some some blank thing and I suspect that council looked at it as a strategic matter and said, The question is, on this lab report basis. Can the court make a finding that it was not passive ingestion. Now, there was no evidence offered a passive ingestion. Mr McElroy didn't testify he didn't call a witness he didn't subpoena lab technician, and his court has said where there are those kinds of challenges. There's not a strong interest in cross examination because the defendant or the release he can can seek that evidence if that's what he wants to put on that evidence was not put on in this circumstance. And so the sole question was, well, what should should the should the, the, the lab tech be called so he can cross examine the lab tech on some other issue. I'm not sure that that it's been shown on this record that the lab tech would have been able to be informative on the particular issue that he was raising the defense that he was raising to this. And that is what amount. How many nanograms per milliliter of a metabolite is enough that it will exclude an inference of passive ingestion. What was established in this particular proceeding was not just a lab report, but all of those other things that the council referenced there in the There were several positive analyses in the July, August timeframe of 2019. Mr McElroy acknowledged that he had been using he admitted even that he had been using for a two week period of time. The one that he that he contested was the one that was the basis for the revocation petition in motion in this particular proceeding. And that was the the lab sample that was taken by Selmar which was a counseling service that he was attending following inpatient treatment that he had in Houston. And, and, and that was the the one that was the basis for the revocation or the finding of possession and use and what what we submit and we said it in our briefing is that there was there was considerable evidence in the form of his long history of addiction. Of substance abuse, the positive analyses that he did not contest did not deny. In fact, he acknowledged that year in the prior year. And I would also point the court to Mr. Mr McElroy is allocution in front of the district court, because Mr McElroy specifically said at the end of it all and he made reference to a conversation he had had with his probation officer, Mr Hale, but but he also said, I could tell you how this dirty ua your analysis came up. And I know you would probably sit there and say no. And then the court cut them off, because the court, I think, was trying to give deference to the position the strategic position that council had taken. But I think that if you read this record. There's no question that Mr McElroy tested positive that was not what was in dispute. The dispute was whether or not this was passive, he offered no evidence of that and as he started to give an explanation. He was cut off and he did and his lawyer, frankly, didn't want him to give the explanation. I we moved to supplement the record with two letters that he that Mr McElroy wrote to the court. Following the sentencing, in which he apologized for taking the position he did it as plea, but he did it on advice of counsel, which to me implies that Mr McElroy fully understands and in his allocution he did understand. He acknowledged that he basically self medicates and the district court in sentencing him said, you need to not self medicate, you have had a serious problem for a long time. I wish you luck in trying to solve it. And in, in passing the in passing the sentence the court sentenced sentenced him to 24 months, but the court did not sentence him to a further term of supervised release, because I think it basically reflected, they've tried, they've gone through the steps they could to try to help him with his problem, and they were going to take it out of the courts, he was going to serve his punishment. And, and then it was, he's going to have to deal with his childhood trauma is post traumatic stress disorder. And outside of the correction system for a time, but that's that's what I think it was as I as I see the case, there are sort of three issues, you know, the first is, was the report properly admitted, or was there some sort of remedy that should be available under Grandland. I don't find a case where this court has granted some kind of relief on a failure to comply with all of the steps of Grandland. And, and I don't know that you will find one because the rules of evidence under the rules of evidence this report was properly admitted. It was a business record and it was unobjected to. What, what is your response to Mr smites argument. If this is a quote mandatory in quote rule that does not require counsel to make any objection on the failure to follow. Well, I don't know where what what what it means to say that it's mandatory it's a rule that judge police devised in a case that actually I happened to argue 30 years or 25 years ago and it sort of came out of nowhere and I think that he was expressing a frustration with these kinds of issues that come up over and over again and I think he was trying to solve something, but the Grandland wasn't addressing a problem that the parties had in this case. There was not a challenge to who took the sample Mr. Mr McElroy know who took that sample he gave it. There wasn't a challenge to what the chain of custody was and there wasn't a challenge to the methodology or the outcome or the result. And in litigation parties make those kinds of determinations. I may allow in here say because although it's hearsay, it's not a mandatory requirement that it not come in and in some instances it's more efficient, and in some instances, it gets in evidence that I'd like to get in anyway and I'm not quite sure how else to do it. And then to come afterwards. Oh, well, I think that hurt me in the end that wasn't a very good decision. Now it's a mandatory rule it shouldn't come in. I don't think that's what Grandland is. And as I think what Grandland was going to is trying to perhaps create some kind of routine normalcy. But, but I can't tell you that every lab company is going to necessarily follow that and if the parties go into the proceeding, sort of understanding what the groundwork is, why do we need to jump through all the hoops to get to get long drawn out affidavits of what that these reports were not given to the defendant five days before sentencing. I'm not sure that judge because the lab report was done before the certification by Miss Pizzo. The certification by Miss Pizzo came on March 17. And here it was on March the 18th. I do not know when, when the lab report was produced may have been produced as part of that. I don't know that it wasn't produced earlier. I'm seeing my internet connections unstable. And so and he didn't complain about it. I mean that's that's what I go back to is, if that were the issue no objection. There wasn't even no objection there wasn't even a complaint I mean and lawyers are good with complaints, even when they don't have an objection. Complaints and objections. Sometime, every single one of us. Hi. The other issue is, is whether confrontation was denied that's the sort of the question of, is there a problem with the court's failure to make an express finding of good cause. I think that the balance comes down, there was implicit finding here, the, the integrity of the testing process was not contested. The, the matter that the Mr McElroy and his lawyer wanted to get into was was not really the subject of cross examination of the lab technician, there might have been witnesses that could testify to how many nanograms is get into. What did they want to get through cross examination. Don't know for sure but what I think it was was about the passive ingestion. I think that's what the issue was, because that's what the back and forth was between the government council and the defense lawyer was about what the meaning of Courtney was, and whether the cutoff was 100 nanograms or 300 nanograms per milliliter. And I mean this this court said in a minute, where basically the release he doesn't put on any evidence at all about passive ingestion. Well, then they are not their rights are not violated if they're not allowed to cross examine. And so he didn't really lay the foundation but you know sort of positing for okay he's raised enough of a question and the lab report says that the testing level was hundred nanograms and above. And so I mean I'm not going to argue to this court that the cross examine that this was a result of ingestion. And the district court believed that the result in this case would be be different when it not. Well, it could be but what I'm saying is, so I don't think it's why shouldn't the district court of allowed cross examination on that particular point, because we have no idea that witness knows anything about that. That's what my point you're asking. Well, but you know it's he is the one who's raising this as as a challenge to the lab report and this court has said for those kinds of challenges to scientific facts. The defendant can call witnesses. He didn't subpoena the lab technician he didn't ask for more time to get the lab technician there. He didn't say we absolutely must have somebody from a layer laboratories or Abbott laboratories, he could have done any of those I think I don't know that I can say that judge what I can say is enough, but if he did not have everything that Gremlin provided, and he was asking for cross examination to establish the fact that this lab report resulted from ingestion, and not from his willful use of cocaine. That would have been. That would have been the most relevant thing in the entire hearing, but that's not rated him if the court had believed it, but that's not what's in the Gremlin affidavit, that's that's not in there that answering that question is not part of the Gremlin information. That's beyond the ground from Granville, and from Granville grandel information packet is the Gremlin affidavit talks about what the laboratory process was what the chain of custody was with the methodology was and what the result was, it does not talk about excluding all possible other theories for how the metabolite could get in there if for example he'd come in and said, I'm taking course Eden and I think that gave a false a false positive. Well, why couldn't Gremlin isn't going to answer that question, but why couldn't he cross examine the lab technician about that. At that particular test would not eliminate the possibility that he could have, could he that he could have achieved that result by ingestion and not by willful consumption. Well, I have two answers to a judge first of all he didn't show that it's there's any likelihood or possibility at all that the lab technician can answer that kind of question because I don't think that's what their expertise is. And second of all, if that's what he wanted to prove he could subpoena the witness, and he had opportunity to subpoena the witness but he didn't, he could have asked the court, can we have more time to get this person here, he didn't ask for that. He didn't even put his own client on the stand to explain why it was passive ingestion. There's no evidence in the record about passive ingestion. It's all his suggestion. There's nothing in the record to support a question of passive ingestion and as this court said in minute. With that, he has no right to cross examine, we didn't get to that. Are you telling me that no lab report of any kind, could have that could have distinguished between willful ingestion and and willful consumption and ingestion through the air, whatever it is, I don't know the answer to that judge. I don't know I don't know that side of course examined him it seems to me that he might well have established that he could have established look, we can't tell the difference. My client says he did it by ingestion. Is that possible, the lab technician would say yes that's possible as far as I know, then he's on his way to making some kind of case might have could have could have would have I don't know judge but that's not in this record he didn't make that record he didn't make that objection and he didn't make efforts to call that kind of witness. If that's what he wanted to put on. He had the opportunity to do it. And in this particular circumstance, he hasn't shown that the the the concerns about what the expenses what delays are the laboratory is in Gretna, Louisiana, and the hearing was in Midland, Texas. That's not just a simple matter of calling somebody to come across the street because we're going to have a hearing we're going to talk to you. That's, that's a, that's a two day trip, at least. He didn't put on a two year trip. It's a two year trip for the defendant. Well, perhaps. But as I say, I mean he had the opportunity to put that stuff on but not putting, but the government not calling the lab technician didn't violate his confrontation right and that's what the issue is here. And the other issue is the sufficiency of the evidence. And as I've already summarized I think the evidence was sufficient, both the strategic decision they made plus the evidence of his prior use the prior positives the uncontested. All of those were sufficient to find. You read, I thought Miss you received did testify that it was possible that this result could have been obtained by passive ingestion. I can't quote or judge I'm not going to dispute that I think Miss you're resting, basically, didn't know she couldn't say it was and she couldn't say it was she said it was possible possible. There's a lot of things that are possible. But that's, that's our position if you have no questions. The defendant himself never testified that I, that, that I think he did say this I don't know what he testified that I did not intentionally willfully consume cocaine. And this is my passive ingestion. He testified to that on the oath. No, sir, he did not. His statement to the court was I could tell you how this dirty you a came up. And I know you would probably sit there and say no, you know, and the court cut him off. So he knew he knew there was a reason for it, but he didn't cancel didn't cancel didn't say, let us explain why. No, the witness did. I'm sorry, it's just like the witness says to the court, as I understand what you said, let me explain why or what and the court says no I'm not going to hear it. That was Mr. That was Mr McElroy. That's why I'm saying that he was going to explain to the court that look, I got this by passive ingestion. And if the expert had already testified that it could have occurred by passive ingestion. And the witness was willing to state on the oath that it did incur through passive ingestion. It seems to me that the witness here is prejudiced by the fact that the district court did not permit that examination or permit that answer. Well, no, the judge the, the, the, the, the defendant was represented by a lawyer, and the lawyer got up at the outset and said we have to contest this, because if he's found to be in possession it's a mandatory revocation. And I think that Mr. McElroy as I read the record and his subsequent letters. He knew that there was dirty urine he knew there was a positive he knew why, but the lawyers position was we're going to call this passive ingestion, and we're not going to acknowledge And I made a mistake. That's how I read it, Judge. I think it's evidence that he did knowingly you know we don't know, really I mean if the court when we don't know the full picture. If the court wouldn't let him explain his position. And that seems to me a denial of due process of some sort, but it's ultimately prejudicial I don't know. Right. I don't know either judge the court cut him off and didn't let him do it. I'm not sure that's what was going on, Judge, I think what was going on is that the defense was, we're not going to talk about this and then Mr McElroy and his allocution started to talk about it some, and the judge said before he before he gave allocation he said, I'm going to give you an opportunity to testify without being cross examined. Well, that's not exactly fair either. And I think the judge was trying to make sure that Mr McElroy didn't say something that was inconsistent with the position that he and his lawyer had taken through the hearing. That's how I read the court saying, Okay, be careful where you're going here. I think that's what it was about. I think he was trying to prevent him from making an admission is what the court was doing. I don't think the court was trying to keep out evidence of passage. This is speculation, Mr Durbin. Well, that's the record that I have, Judge Jolly. You have to work with what you have. We have to draw the inference from it and they would you know the bottom line to me is look at the end of the day, the issue that he was he was not contesting that he had dirty urine. That's not an issue. So Granlin is interesting, but it didn't make any difference. The issue at the end of the day was was this cross examination right cut off. Well, it didn't. My position is he could have called those witnesses if he wanted them. And second of all, he didn't show that the lab technician was going to be somebody who could answer that kind of question in any event. So his confrontation right wasn't violated. Thank you. Thank you. Would you add three minutes to rebuttal. Yes, Your Honor. Well, in response to Mr Durbin about Granlin, I think he's incorrect with that. One thing that Judge Jolly brought out is if the government had complied with Granlin like it was supposed to, that would constitute pretty much a notice in demand statute that is talked about in Melendez DX. And that is where the government has testimonial hearsay evidence that it wants to produce against the defendant and the defendant after looking at the evidence can object or not object. And that's one of the reasons why I suppose that Granlin is the rule that it is. Let me ask you this question about the aside from this argument. Is your client in jail now? Yes. Yes, he's still incarcerated. The last time I spoke with him. His proposed release date, do you know? Um, I didn't look that up, Judge. He was he was going to be released to a halfway house. The last time I spoke with him, which was, I think, two weeks ago. Other than that, he was he was still incarcerated over in Segalville, Segalville, Texas. So, I mean, if we don't give some relief within a few weeks or at least a few months, this case is moved. Yes, he will have served his entire sentence. Yes, Your Honor. Yes. And, you know, that does bring that does bring to bear somewhat the grant. I think in these revocation hearings, because what what happened here was the only evidence that I see in the record is that the government filed the lab report the day of the hearing. We don't know whether it's that morning. We don't know whether it's at the time of the hearing or even after. Mr. Durbin makes a big deal about, well, the defendant had all these options, but actually the lab report seems to be a sprung at the time of the hearing. That's one thing that Granlin says shouldn't happen. The defendant, as part, I think, of due process, because Granlin, after going through all these cases after Morrissey, decides this is what we're going to obligate the government to do in this in these cases with this particular kind of evidence. And the district courts needs to put explicitly on the record why it is reliable. That is a protection against hearings very much like this one, because we complain about the sufficiency of the lab report. There's the methodology is missing. The the chain of custody is missing. And Mr. Durbin responds and says, well, everybody knows. Well, that's kind of like just saying, well, everybody knows Mr. McElroy violated. So what's the problem? The problem here is due process. And Mr. Durbin refers to all these alleged admissions and even as far back as PSR 2011. But none of that was presented by the government at the hearing. You know, when we go and look at Morrissey, Mr. McElroy is entitled to due process. Confrontation is confrontation. It's not something else that's under Crawford. So so what the court has done, I think actually it's it's a smart thing that the court has done with Bramlin is to obligate if the government wishes to admit laboratory reports in revocation hearings. This is what it has to do. If it doesn't do that. Question is, what is the remedy? Is the remedy what we see here in this hearing where the defendant goes away for two years and the government makes arguments saying, well, everybody knew what was going on? I think if if a party has an affirmative obligation and it doesn't conform to that obligation, then the result should be that it doesn't benefit from that failure. Well, I mean, the also the defendant has an affirmative obligation to object. Yes, your honor. Well, as the district court has the right to have the objection presented to him and not. Find out about it on the field. Well, and that's correct. Could have corrected it, Sarah. At that time, if you had made the proper objection, you didn't do it. Well, your honor, I mean, that goes back to, I guess, this court should examine Bramlin to see whether it is mandatory or actually whether it's optional. Because if you're not a government, I'm sorry, my satisfaction what you mean by mandatory. There's a lot of mandatory rules that are certainly subject to object to waiver on appeal. Right. And this is like, I don't know. I mean, there are very few rules. That that that are automatically imposed on the judge without any kind of objection from the party. Well, you know, your honor, in preparing for oral argument, I took I took another look at Gremlin because I was prepared to say that the government can choose to comply, comply with Gremlin or at the hearing. It can produce live witnesses. But going back to the to the text of Gremlin itself, Gremlin says, basically, if the government wants to introduce this evidence, this is what it has to do. And it doesn't it doesn't give any other options. It doesn't say or. And it also procedural rules are written in and in mandatory terms quite often. The government shall this shall not be admitted. This shall be admitted. And then if you don't make an objection to it, you are not able to raise it on appeal. Well, I have no reason why this should be an exception to that group. Well, the the trial lawyer did say he objected. He said, I'll make the constitutional objection. And then he he talked about Sixth Amendment hearsay. And that's what that's what this is. It is testimonial hearsay evidence. And, you know, what more was he supposed to object to? You do have the district court in this case that once he makes the objection, the district court just overrules without any explanation. The probation officer that's testifying is not even Mr. McElroy's own probation officer, but just to stand in. And then he makes another objection, the same objection that previously made regarding the Sixth Amendment hearsay. And that's after it's already admitted. I do think, like I said, you know, looking at the brand and criteria, you know, it's this court's rule. If the court doesn't want to enforce the rule, I think the court can rescind it or or just say that it's it doesn't have to be enforced. It's and it becomes actually a suggestion. Let me ask you this. Is it fair to say that your argument here is that the government, if they could do it, they were required to prove that the quantity of the I don't I don't know what the term is. The nano whatever was such that it was it was high enough to exclude passive ingestion and the government didn't do that. And you your client's counsel did raise that objection that that is your honor. I think the test does not exclude passive ingestion and therefore there's insufficient evidence in this record for the government to meet its burden that the ingestion was knowingly. Is that your argument in a nutshell on that issue? Yes, your honor. You know, and going back to Gremlin, I think if if the government had complied with Gremlin with what we see with the three criteria, it might have taken care of that issue. But since it didn't comply with Gremlin that that issue, yes, is still present and it's insufficient. OK, thank you. Cancel. We have your argument. Mr. Spies, we realize that you report appointed and we appreciate your willingness to serve the court. And you've done an excellent job. Thank you. Thank you, your honor.